CHARLES M. HOUGH vs. CITY OF NORTH ADAMS.

Berkshire.    September 10, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Taxes,* Abatement.  *Bankruptcy.*  *Words,* "Person aggrieved."

A purchaser of land, buildings and machinery from a mortgagee, which acquired its title by a foreclosure sale, is not a person aggrieved within the meaning of R. L. c. 12, § 73, by the assessment of a tax upon this property to the mortgagor, a corporation, if before the first day of May in the year for which the tax was assessed such corporation had been adjudicated a bankrupt and its trustee in bankruptcy had been appointed, to whom under the bankruptcy act of 1898, § 70, all its property, with certain exceptions not material, had passed, and certificates of the adjudication and the appointment had been recorded in the registry of deeds in the county where the property was situated, the assessment being void, and therefore such purchaser from the mortgagee cannot maintain a petition for an abatement of the tax under the statute.

" A person aggrieved " by the taxes assessed upon him, who by R. L. c. 12, § 73, is given the right to apply for an abatement, is a person whose pecuniary interests are or may be affected adversely.

PETITION, filed December 4, 1905, under R. L. c. 12, § 73, for an abatement of taxes for the year 1905 on certain property in North Adams as described in the opinion.

In the Superior Court the case was heard by *Dana,* J., who ruled that the petitioner was not a person contemplated by R. L. c. 12, § 73, who is entitled to an abatement. He ruled that the assessment was void, and ordered judgment for the respondent. At the request of the petitioner, the respondent consenting, the judge reported the case for determination by this court upon the following reservation : " If, upon the foregoing facts, and the inferences to be drawn therefrom, the petitioner is entitled to relief under R. L. c. 12, § 73, order to be ' Cause remanded to the Superior Court for further action,' or such other order as the cause in justice and equity requires ; otherwise, order to be ' Judgment for the respondent affirmed,' or such other order as the cause in justice and equity requires."

The case was submitted on briefs.

*W. F. Barrington,* for the petitioner.

*J. H. Mack & P. J. Ashe,* for the respondent.

RUGG, J.   This is a petition for the abatement of taxes for the year 1905.   The property taxed consisted of land, buildings and machinery of a mill known as the Johnson-Dunbar Company.   The Johnson-Dunbar Company was a foreign corporation, and this property had been assessed to it as owner previous to 1905, and it was so assessed for that year.   On October 10, 1904, the Johnson-Dunbar Company was adjudicated a bankrupt, and on November 30, 1904, one Squires was appointed its trustee in bankruptcy, both the adjudication and the appointment having been recorded on January 6, 1905, in the registry of deeds for Northern Berkshire, within the district of which the property was situated.   On April 13, 1905, the Commercial Trust Company of New Jersey, a foreign corporation, the mortgagee named in a mortgage given to it by the Johnson-Dunbar Company upon the property in 1901, entered for the purpose of foreclosing the mortgage, a certificate thereof being recorded in said registry of deeds, and duly foreclosed the mortgage, and on June 23, 1905, conveyed by deed all the property in question to the petitioner, which deed was duly recorded July 17, 1905. The tax bill for 1905 was sent to the petitioner, who was not a resident of this Commonwealth, and who on October 2, 1905, paid the tax under protest in writing, and on September 30, 1905, made application to the assessors for an abatement, which was refused.   The question raised is whether under these circumstances the petitioner is "a person aggrieved by the taxes assessed upon him," within the meaning of these words as used in R. L. c. 12, § 73, so as to enable him to maintain a petition for the abatement of taxes.   As used in this statute, the words "a person aggrieved" mean one whose pecuniary interests are or may be adversely affected.   A similar meaning is given to nearly the same words in certain statutes relating to appeals. *Pierce* v. *Gould*, 143 Mass. 234.   The inquiry then is whether the assessment of the tax in question could work any harm to the property rights of the petitioner.

It is stated in the petition that the trustee in bankruptcy conveyed the interest acquired by him by operation of the bankruptcy act to one Gluck on March 17, 1905, subject to the mortgage.   The answer to the petition is, in substance, a general denial and, although it is stated in the report that the pleadings

may be referred to, yet there is no finding in the report as to this conveyance, and it cannot therefore be regarded for the purposes of this decision. If this be the fact, the assessment to Johnson-Dunbar Company on May 1, 1905, was void, and no valid action could be founded upon it. *Desmond* v. *Babbitt*, 117 Mass. 233. *Tobin* v. *Gillespie*, 152 Mass. 219. We must, however, assume that the only change in the record title between May 1, 1904, and May 1, 1905, was the adjudication in bankruptcy of the Johnson-Dunbar Company. Under these circumstances the situation of the title was the same as it would have been under a deed of conveyance from the bankrupt to its trustee. It does not appear whether the certificate of entry of the Commercial Trust Company of New Jersey, under its mortgage, was recorded before or after the first of May, 1905. In any event, its only effect was to authorize the assessors to make the assessment to the mortgagee in possession, and as no such assessment was made, this circumstance may be disregarded. Under the bankruptcy act, (U. S. St. July 1, 1898, c. 541, § 70,) "The trustee of the estate of a bankrupt, upon his appointment and qualification, . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, . . . to all . . . (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." No other act than the filing of the petition and the appointment and qualification of the trustee is required to vest by law the title of the bankrupt's estate in his trustee. As was said in *Bank* v. *Sherman*, 101 U. S. 403, 406, cited in *Conner* v. *Long*, 104 U. S. 228, "The filing of the petition [in bankruptcy] was a *caveat* to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication. If that were in his favor they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, *civiliter mortuus.*" A part of this language is quoted, and the case cited with approval in *Mueller* v. *Nugent*, 184 U. S. 1, 14. There is nothing in *York Manuf. Co.* v. *Cassell*, 201 U. S. 344,

353, to impair the force of this language respecting such a case as that now before us. The adjudication and the appointment were constructive notice to everybody, at least within the federal jurisdiction, of the transfer of the title to the bankrupt's property, and no one could thereafter deal with it on any other basis than that the ownership of the bankrupt had ceased and the title had become vested in the trustee. *Stevens* v. *Mechanics' Savings Bank*, 101 Mass. 109. *Fuller* v. *New York Ins. Co.* 184 Mass. 12. The record of the adjudication of bankruptcy and the appointment of the trustee in the registry of deeds for the district, in which the land was situated, before the first of May, 1905, was an additional constructive notice to the assessors that the title had passed out of the bankrupt. That the assessors did not in fact make their assessment until after July 20, 1905, is of no consequence, for the reason that under the statutes of this Commonwealth the assessment, when made, takes effect as of the first of May of the year in which it is made. Nor is it of any significance that the assessors knew of the bankruptcy and of the conveyance to the petitioner. The assessment of taxes is a purely statutory proceeding, and ordinarily must be pursued with technical strictness, in order that the acts of the assessors may have any validity. No tax can be sustained as valid unless it is levied in accordance with the letter of the statute. The invalidity of the tax in question did not depend upon any evidence. An inspection of the record disclosed its illegality, and made it apparent that no proceeding *in rem* under the assumed tax lien could affect the title in any way. In this as well as in other respects the case is distinguishable from *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491. It follows, therefore, that the petitioner, being the owner of the property by conveyance from the mortgagee, could not by any legal possibility be harmed by the assessment of the taxes upon the property in question to one who was neither the record owner nor in occupation on May 1, 1905 ; hence he was not aggrieved, and did not belong to the class of persons upon whom the statute confers the right to bring a petition for abatement. Whether the petitioner may have a remedy by some other form of procedure is not before us. Under the terms of the report, let the entry be

*Judgment for the respondent affirmed.*